MARCIA TORRES MALDONADO, Plaintiff and Appellee, *v.* ANTONIO FERNÁNDEZ MÉNDEZ, Defendant, and LUIS G. HERNÁNDEZ, Defendant and Appellant.

No. 9146. Argued December 13, 1945.—Submitted February 6, 1946.

*Manuel García Cabrera* and *Antonio Quirós Méndez* for appellant. *Miranda & Miranda Esteve* for appellee.

MR. JUSTICE DE JESÚS delivered the opinion of the court.

Marcia Torres Maldonado purchased a rural property from Higinio Pastoriza and his wife by deed No. 68 of May

15, 1929, executed before Notary Damián Monserrat Simó. It was stated in the deed that the purchase price was $6,500, of which the purchaser paid $500 and retained the remaining $6,000 in order to pay a mortgage which encumbered the property in favor of Antonio Fernández Méndez. Said mortgage was executed by Pastoriza by deed No. 24 of July 26, 1928, before Notary Eduardo López Tizol in order to secure a loan which he received from Fernández Méndez for the sum of $6,000, plus interest thereon at the rate of 1 per cent per month until fully paid. The following conditions, among others, were stipulated in the deed:

"Second: That the principal shall earn interest until fully paid at the rate of 1 per cent per month, payable at the end of each month at the domicile of the creditor, upon the condition that if default be made in three consecutive installments, the whole obligation shall become due and the creditor shall be entitled to sue for the recovery of the principal and interest.

"TERM

"Third: That the amount loaned shall be reimbursed to the creditor within the term of two years counted from this date. [July 26, 1930.]

"ADDITIONAL CREDIT.

"Fourth: By mutual agreement an additional credit of five hundred dollars is fixed for interest, costs, expenses, disbursements, and attorney's fees in case of litigation, as follows: three hundred dollars for interest and two hundred dollars for costs, expenses, disbursements, and attorney's fees.

"SECURITY.

"Fifth: To secure the six thousand dollars and the five hundred dollars of the additional credit, the debtor spouses Pastoriza-Cruz mortgage the following property in favor of Antonio Fernández Méndez:"

On July 12, 1933, the aforesaid Fernández Méndez instituted in the District Court of San Juan, a summary foreclosure proceeding against Marcia Torres Maldonado. In

the petition he alleged that the mortgage had become due on July 26, 1930, and that from that date Marcia Torres Maldonado had failed to pay the interest, which at the rate of 6 per cent per annum, as alleged by the creditor, amounted to $1,050.[1] As a result of this proceeding, on November 14, 1933, the property was awarded to Fernández Méndez in payment of the amount claimed, that is, $6,000 as principal plus $1,050 as interest, and $200 for costs and attorney's fees.

Fernández Méndez was in possession of the property until February 26, 1943, at which time he sold it to the corporation Personal Savings and Trust Company, and the latter sold it to Luis G. Hernández on March 30, 1943.

On May 4, 1944, Marcia Torres Maldonado brought this action against Antonio Fernández Méndez and Luis G. Hernández, seeking to annul the foreclosure proceeding on the following grounds:

(a) Because the petition did not specifically state the amounts claimed as interest or on account of the principal, nor did it set forth the net amount of the claim as required by § 169 of the Mortgage Law Regulations;

(b) Because it is impossible to determine the amounts claimed in the petition on account of interest, "inasmuch as the debtor is bound under the mortgage deed to pay interest at the rate of 1 per cent per month until the debt is fully paid, while in the petition he claims interest at the legal rate from the maturity of the mortgage until the filing of the petition, and it is alleged that said interest amounts to $1.050";

(c) Because the writ demanding payment, issued in the foreclosure proceeding, is void inasmuch as in the petition the interest at this legal rate is claimed from the maturity of the obligation until the filing of the complaint and the court ordered that the defendant be required to pay interest from the constitution of the mortgage until the filing of the petition;

---

[1] Computed at the rate of 6 per cent, the interests amounts to $1,066.

(*d*) Because the court did not acquire jurisdiction over the person of the defendant in said proceeding, inasmuch as the service of process was void. Said nullity was predicated upon the fact that the court ordered the marshal that, in case the mortgagor did not reside in Puerto Rico, he should try to serve the demand on the attorneys in fact or lessees, and the marshal exceeded himself in making service differently from what the court ordered, because he notified the attorneys-in-fact of the debtor, as she was not found within the judicial district of San Juan, and her residence was unknown to him, it being a prerequisite, in order to dispense with personal service, that the debtor should not reside within the municipal judicial district, and this fact does not appear from the demand; and

(*e*) Because the petition, the service of process, and the public sale of the property effected by the marshal are void, since the court did not acquire jurisdiction over the mortgagor and, further, because the debtor was required to pay and did pay the sum of $750 as interest which was not secured by the mortgage.

In virtue of the nullity alleged, she claimed the restitution of the property plus the fruits yielded or that should have been yielded, and consented, in turn, that the mortgage credit be reëstablished with all its consequences.

The court considered and dismissed the grounds of nullity described under letters *a, b, c, d,* but sustained the complaint on the ground marked *e,* that is, that the creditor had recovered $750 in excess of the $300 additional credit for interest, which was the only amount that, in addition to the principal according to the court and to the appellee, the mortgage was entitled to recover within the foreclosure proceeding.

As a result of the annulment of the mortgage foreclosure proceeding, the lower court ordered the defendants to return to the plaintiff the mortgaged property together with the

fruits yielded or that should have been yielded. It likewise ordered the plaintiff to pay to the defendants certain amounts as compensation for administrative expenses, improvements, taxes, etc.

It is from this judgment that defendant Luis G. Hernández has appealed.

■■ We agree with the judge of the lower court that within a foreclosure proceeding, any amount claimed not secured by the mortgage invalidates the proceeding. *Santos* v. *Crédito y Ahorro Ponceño*, 41 P.R.R. 934; *Martorell* v. *Crédito y Ahorro Ponceño*, 42 P.R.R. 632; *Vázquez* v. *Gutiérrez*, 52 P.R.R. 162; and *Figueroa* v. *Boneta*, 58 P.R.R. 811. Having established this principle, the main question for decision is whether or not the amount of $750 for interest which Marcia Torres alleges was recovered in excess, was secured by the mortgage.

■ A logical consequence of the legal theory that the accessory follows its principal is that interest being the yield of the principal amount. if said interest is stipulated in the deed at an agreed rate, and it is so stated in the record, the interest is secured by the mortgage which guarantees the principal, even though it has not been expressly secured. The Commission of Codes, upon referring to this subject, under the title "*Extensión de la Hipoteca*" (Scope of Mortgage), in its Statement of Motives and Grounds of the Mortgage Law of February 8, 1861, stated:

"Should the mortgage be extended so as to secure the interest on the principal which it guarantees? No reference to this point appears in our ancient law nor should one expect it, since it has so severely condemned usury, considering as such any sum of money which the debtor paid to the creditor in excess of the amount of the loan and regarding payment of interest lawful only when accepted by the dictates of conscience of the most exacting moralists. But ever since the written law began to mitigate the old strictness; ever since prevalence of other economic-political principles, brought to an end the erroneous belief that money was not productive; ever since the lawmaker became convinced that the serious penalties to

do away with the interest on money reverted to these persons for whose protection they had been enacted, for they had to pay a higher interest for the loan received (as a means to compensate somewhat the risk taken by the money lender), they *were constrained to consider that the mortgaged properties were subject to the payment of interest just as they were to the payment of the principal amount."* (Italics ours.)

And, further, under the title *"De las Hipotecas Voluntarias,"* (Voluntary Mortgages), it repeats:

"In dealing with the scope of mortgages, it has been stated *that it also includes the interest on the principal amount* with the limitations that have been deemed advisable in order to avoid prejudice to third persons." (Italics ours.)

In harmony with the principle set forth in the above-copied paragraphs of the Statement of Motives, its authors have provided in § 12 of the Mortgage Law, as follows:

"The record of mortgage credits shall in every case set forth the amount of the obligation secured and the interest, *if any,* in the absence of which statement such interest shall not be considered secured by the mortgage, according to the provisions of this law." (Italics ours.)

To the same effect see Galindo y Escosura, *Comentarios a la Legislación Hipotecaria,* vol. 3, pp. 218–219; *Morell, Comentarios a la Legislación Hipotecaria,* vol. 3 p. 715; *Barrachina, Comentarios a la Ley Hipotecaria,* vol. 3, pp. 86–88; Gómez de la Serna, *La Ley Hipotecaria,* vol. 1, p. 484, paragraph 31; Sánchez Román, *Derecho Civil Español, Común y Foral,* vol. 3. pp. 803–804; Martínez Moreda, *Legislación Hipotecaria,* vol. 1, pp. 527, 532; Moscoso, *Tratado de Legislación Hipotecaria,* p. 214; F. Clemente de Diego, *Instituciones de Derecho Civil Español,* vol. 1, p. 467; Demófilo de Buen, *Derecho Civil Español Común,* vol. 1, p. 317; Valverde, *Tratado de Derecho Civil Español,* vol. 2, pp. 648, 650; and Manuel Dorta Duque, *Curso de Ley Hipotecaria,* vol. 1, pp. 128, 129.

But since the aim of the Mortgage Law is to promote land credits on the basis of mortgage security and payment of the

debt, its authors could not disregard the rights of a third person who might acquire ownership of the mortgaged property or a real right therein. To this end § 114 of the Mortgage Law prescribes:

"A mortgage constituted to secure a credit which earns interest, shall secure with regard to third person, in addition to the principal, only the interest for the two years last past and that part of the current year which may have accrued."

Consistent with the principle set forth in § 1774 of the Civil Code and § 146 of the Mortgage Law, to the effect that in order that a mortgage be valid it is necessary that the instrument wherein it is embodied be recorded in the registry of property, they provided in § 146 of the Mortgage Law as follows:

"The interest on the loan shall not be held to be secured by the mortgage in the form prescribed by article 114, unless the record itself shall show the agreement and amount of such interest."

In the present case, it was stipulated in the mortgage deed that the principal of the debt earned interest "at the rate of 1 per cent per month until the loan is otally paid"; and from the certificate of the registrar of property which was attached to the petition in the foreclosure proceeding, it appears that when the mortgage was recorded the interest and the agreed rate was stated in the record pursuant to the provisions of § 12 of the Mortgage Law. This being so, the interest was secured by the mortgage which guaranteed the principal.

But since according to § 114 of the Mortgage Law, a mortgage constituted to secure a credit which earns interest shall secure, to the prejudice of third persons, in addition to the principal, only the interest for the two years last past and that part of the current year which may have accrued, we must determine now whether, according to the evidence in the present case, Marcia Torres was liable for the amount of $1,050 for interest accrued after she purchased the property.

Morell is of opinion that the third person does not assume the personal obligation of the original debtor, unless he has been subrogated in the latter's obligation, and, therefore, that he is not liable for the interest that may have accrued after he purchased the property, for which interest the morgagor continues to be responsible. *Op. cit.,* vol· 3, p. 717. This court has followed that same doctrine in *Successors of Hilario Santos* v. *Morán,* 32 P.R.R. 55; *Trueba et al.,* v. *Rosales & Co·* *et al.,* 33 P.R.R. 986; and *López* v. *Sierra,* 49 P.R.R. 335. Other commentators, such as Galindo and Escosura, *Comentarios a la Legislación Hipotecaria de España* (4th ed.), vol. 3, p. 245, and Martínez Moreda, *Legislación Hipotecaria,* vol. 1, p. 536, on the other hand, are of the opinion that the third person is responsible in addition to the two years last past and that part of the current year which have accrued, for all the interest accrued from the time of the purchase because thereafter the third person substitutes the mortgagor.

Whether we follow the theory of Morell and the cases cited or that of Galindo and Escosura and Martínez Moreda, the result would always be the same, since having Marcia Torres retained such part of the purchase price as was necessary to pay the mortgage to the creditor, she subrogated herself in the obligation of the mortgagor, and, consequently, she was responsible for the interest accrued from the time she failed to pay it on July 26, 1930, until the institution of the foreclosure proceeding.

■■ However, the judge of the lower court and the appellee contend that by virtue of the fifth clause of the deed wherein the mortgage was constituted "to secure the amount of $6,000 and $500 as additional credit." of which $300 was for interest and $200 for costs, in any event the mortgage would only secure interest in the amount of $300, as to the original debtor as well as to the subsequent purchaser.

Such interpretation overlooks the fact that the mortgage which expressly secured the principal, impliedly secured, by

operation of law, the interest which the original debtor had to pay until the debt were fully paid. Consequently, it served no useful purpose to execute another mortgage to secure what the law had already secured. If we consider that, as a general rule, interest is the only inducement, which moves the creditor to lend his money; and if we take into account the protection which the law affords a mortgagee by securing by mortgage all the interest stipulated—provided it is stated in the record—so long as the encumbered property belongs to the original debtor, we should not presume that the creditor has waived in part this right by reducing the security to five monthly payments of interest ($300) only, unless it clearly and unequivocally appears from the contract that it was the intention of the contracting parties to modify the standard provided by law. On the contrary, it appears from the deed itself that such was not the intention of the contracting parties, for they not only stipulated the interest for the term of the contract, but they agreed that it should be paid until the obligation were totally paid and further stipulated that if default be made in three monthly installments of interest, the creditor would be entitled to bring an action for the recovery of both principal and interest.

It is a well-settled rule of construction that when a contract has been regulated by law it is presumed that the contracting parties have fully accepted the legal standards under which it is regulated, unless said standards have been expressly excluded or modified by mutual agreement of the contracting parties. We have already seen that the contract is regulated by the Mortgage Law and that, according to it, in a credit which earns interest the latter is secured by mortgage so long as the encumbered property is in possession of the original debtor or in that of a subsequent purchaser who has been subrogated in the latter's obligation, provided that the stipulation of interest and the agreed rate are entered in the record. To this effect Manresa says:

"The statutes in general and elements of a contract as a criterion of construction.—Before entering into a detailed examination of the different rules supplied by the Code, we must take note of a fundamental one, a standard which can not be overlooked, because it solves the problem of construction and really prevents that it should arise, through deficiency or omission, in most cases.

"We refer to the various laws which regulate each contract, or all of them in general; to that sort of printed form which contains unnecessary provisions, and supplies the contract to the contracting parties in order that they should accept it in its entirety, modify it as to those parts which are not essential and binding, or to complete it with whatever conditions they may agree consistent with its nature. These supplementary forms, these legal standards, are presumed to have been accepted unless otherwise expressed, and, consequently, within the lawmaker's foresight, the contract is perfected and any deficiency supplied probably without any need of construction. Thus, by merely agreeing to the thing and the price, in the contract of sale, various incidents which may ordinarily arise in the performance of said contract will be determined by their implied submission to the law.

"What has been said refers to the acceptance of the natural elements of the contract, provided nothing to the contrary is agreed upon; and the exclusion of accidental circumstances, unless they are expressly stipulated; a distinction which we already pointed out (Sec. 1261) and has been sanctioned by the decisions stating that 'the natural elements of the contracts are understood as being included when consent is given, unless otherwise expressly agreed' (decision of November 21, 1862) and that 'any condition or circumstance pertaining to an ordinary contract shall be understood as having been included, unless it is expressly excluded by mutual agreement of the contracting parties; it being the other way as regard accidental conditions, performance of which can not be required unless it has been expressly and explicitly stipulated.' (Decision of May 5, 1873)." *Comentarios al Código Civil* (2d ed. 1907), vol. 8, p. 703.

The reasoning on which the lower court based its conclusion that the security of the interest, in so far as the original debtor is concerned, was limited to $300, confuses the princi pal mortgage which secured the debt and the interest until its full payment, with the special mortgage which reduced

the liability for interest with prejudice to a third person, from two yearly payments and the current one, to the amount of $300.

In *Gutiérrez* v. *Longpré,* 44 P.R.R. 643, the action involved was one of nullity of a foreclosure proceeding. It was alleged therein, as in the present case, that the creditor had recovered more interest than had been secured by mortgage; and in the mortgage deed the debtor was bound to secure the $40,000 loaned at an annual rate of 8 per cent. "In the said contract there was an additional clause by which the debtor nominally made a special agreement or charge for the payment of interest up to $1,000." It was also agreed that if six monthly payments of interest were due and not paid the mortgage should become due. Upon deciding this question this court stated:

"We can not agree with the appellee or the court below that the mortgage creditors were limited to the sum of one thousand dollars for interest, inasmuch as although that sum was specifically mentioned the whole mortgage deed tended to show that the parties agreed to pay interest in a much greater amount. The mortgage deed provided for a payment of the principal with interest at 8 per cent; also provided that the mortgage should become due if the mortgagors failed to pay six months interest and for such a default the suit was brought. The intention of the deed to cover all interest was clear and the additional clause covering $1,000 could not be considered as a limitation."[2]

The foregoing leads us to the conclusion that the special mortgage should be understood as having been executed solely as to the interest, in order to limit the security of the latter to the prejudice of a third person.

■ It being so, the lower court erred in annuling the foreclosure proceeding on the ground marked *e,* which we have just discussed. But since an appeal is taken from the judgment and not from the grounds supporting it, if from

---

[2] It should be noted that when the foreclosure proceeding was instituted on July 12, 1933, the case of *Gutiérrez* v. *Longpré,* 44 P.R.R. 643, had been decided 4 months previously.

the pleadings and the evidence there arise other grounds which may support the judgment, then the latter should prevail. Let us examine, therefore, grounds *a, b, c,* and *d* which were considered and dismissed by the lower court.

■ (*a*) The ground marked *a* does not merit serious consideration. The petition claimed $6,000 as principal and $1,050 as interest, which is alleged to have accrued from July 26, 1930, until July 12, 1933, on which date the foreclosure proceeding was instituted, plus $200 for attorneys fees. We agree with the judge of the lower court that the amount claimed could not be set forth more specifically.

■ (*b*) The one marked with letter *b,* is untenable. A mere arithmetical operation reveals that when the interest on $6,000 was fixed in the amount of $1,050 from July 26, 1930, to July 12, 1933, the computation was made at the rate of 6 per cent per annum. It is true that the interest was agreed at an annual rate of 12 per cent, but since by recovering interest at 6 per cent the claim made did not exceed the amount secured by mortgage, the benefit thus obtained by the debtor can not render the proceeding void.

■ (*c*) The fact that it was claimed in the petition that the interest was due from the maturity of the obligation, and in the writ demanding payment it was erroneously stated that the amount of $1,050 corresponded to the interest due from the time the mortgage was executed until the commencement of the foreclosure proceeding, it is not a prejudicial error, for, as a matter of fact, said sum corresponds to interest accrued at the annual rate of 6 per cent from the maturity of the obligation until the filing of the foreclosure proceeding.

■ (*d*) And lastly the ground marked with letter *d,* is also untenable. It appears from the marshal's return that, the defendant not being within the judicial district of San Juan and the place of her residence being unknown to the marshal, he served process on the attorneys-in-fact of the defendant who were in possession of the property in said

capacity. Moreover, plaintiff's evidence in the action for annulment discloses that she moved to the United States since the year 1928 and at the time of the action for annulment she was still living in that country.

Since the ground on which the judgment was based is erroneous, and as no other ground in support thereof appears from the pleadings and the evidence, the judgment must be reversed and another rendered instead dismissing the complaint with costs on the plaintiff.

Mr. Chief Justice Travieso and Mr. Justice Córdova did not participate herein.